We move to the ninth case this morning, Acosta v. DT & C Global Management. Mr. Brey? Thank you. May it please the court, counsel, again, Kevin Brey for the appellants. This case is before you on appeal of denial of two federal Rule 60B motions that were brought. There's two cases that are consolidated and they follow very similar tracks in the trial court. I would want to point out that there are different defendants in each case. In the DOL case, there's the corporate defendant and also two individual defendants who were principals of the corporate defendant. In the other case, there's just one defendant, Mr. Jansen. And I know the court's familiar with the facts, but I did want to point out the major factors which the appellants are relying upon. This was not a default judgment in the sense that the defendants never appeared, ignored their obligations entirely, and found out there was a judgment against them and decided to go and try to get it vacated after it had been entered. In this case, the defendants did appear, retain counsel. According to Mr. Jansen, paid tens of thousands of dollars to have their interests represented in the case. The case did proceed on the pleading stage and into some limited discovery. Apparently, there was a breakdown in the relationship between counsel and the defendants. As the affidavits set forth, it was one of the defendants, Mr. Jansen, who was responsible for trying to coordinate the litigation. But that defendant made some mistakes and may have neglected the case. And I guess the issues are, why did that occur? And does it excuse things to the extent that vacature would be proper? There were some significant health issues. It was numerous different health issues. There was prior back surgery, but that had been years before. There was major heart surgery that this individual had late in 2014. And this is a 2014 and 2015 case we're talking about. Individual was on numerous medications. The ultimate fact and the ultimate point that's asserted and not contradicted is that these numerous health issues that he had, including some neurological problems, which developed apparently, they interfered with his ability to properly and fully, I should say, participate in the case. Another salient fact, it's also uncontradicted, is that these defendants did not receive notice of the judgment until several months later. They didn't receive the mailed notice because they were not residing in state. The e-mail had been transferred to a different address. These are in the affidavits. And when they did receive any kind of notice with respect to one of the cases. Did they change their address with the court? Pardon? Did they change their address with the court? The defendants did not, but the last known address that the council had provided was no longer the address of the defendant at the time. Right. So it's the defendant's fault. It's not the court's fault or the plaintiff's fault. I would say that it was defendant's fault. Was at fault. Right. Made a mistake perhaps. You can't offer that as an excuse for inattention to the litigation. The notice wasn't received. Notice wasn't received because they were inattentive to litigation and failed to keep the court apprised. Unless maybe there's some excuse for that inattention and that mistake. And that's what we're trying to put forth here. Well, the court said there wasn't, that these medical excuses did not suffice, that this was just inattentiveness to the litigation over an extended period of time. If we look at these, Your Honor, one, if we look at each asserted reason in isolation, I would agree that it's not sufficient. But it wasn't just that kind of inattentiveness. He also tried and did, in fact, retain new counsel to investigate and appear in the case and handle his interests. Now, that new counsel was not followed up with, apparently. But that new counsel passed away. And that, again, is uncontradicted. That's not going to help you here if there was no communication with the court. What he was doing to try to retain a new attorney many months after the fact doesn't really matter if he wasn't communicating with the court. But it wasn't after the fact. It was before the judgments that he had retained the new counsel. And then he found out several months after that the attorney had passed away. Again, if it was just that, I would say no. I guess what I'm trying to rely on here, and I realize it's a difficult challenge, but is the idea that these numerous things occurred with respect to this case. And taken together, although we would criticize some of the different manners in which the defendants did or did not proceed, there's a reason for this. And, again, there was no trial on the merits. We're sensitive, of course, to the fact that there does need to be rules that provide for the end to litigation. But also, you want there to be justice. And in these cases, they really didn't get litigated. They didn't get negotiated. And they were in negotiation. And so really, again, with respect to Co-Defendant Lynch and one of the other cases, he was blameless because he was relying on the principle of the company to handle these things, and he never got notice. He says in his thing, they didn't yet notice that there were judgments against them personally, frankly, until they met with myself and another attorney in the summer of the next year. And then it did take us two or three months to get the motions on file. But, again, there were reasons for that if you look at the situation here. So I don't condone litigants ignoring their responsibilities in litigation. But different litigants have different ways of going about it. And perhaps this litigant was more laissez-faire, leaving it to the attorneys, than should have been. But that, in and of itself, we don't think should defeat their ability to get a hearing on the merits. Unless there's any other questions, I'll reserve. Thank you. Thank you. May it please the court, I'm Sarah Conrath, representing the Secretary of Labor. The district court in this case acted within its considerable discretion when it denied the defendant employer's motion to vacate the default judgment. One, they didn't have good cause for the default. Two, they didn't act quickly to remedy the default. And three, they didn't present a meritorious defense to the claims against them. And if the defendants had failed on any one of these three requirements, the district court could have denied their motion. But the employers in this case actually failed all three. I want to turn to the issues that opposing counsel raised. He focused on the fact that the employers have claimed that they didn't receive notice. As Your Honor noted, that is because they didn't take reasonable steps to ensure that they continue to receive service by updating their address with the court. And this actually sort of follows a pattern. The department had had problems with the defendants prior to the entry of default judgment. We didn't receive any documents in response to our discovery requests and granted several extensions but ultimately had to file a motion to compel because the defendants were not responding to discovery requests. And then they twice failed to appear at a hearing where the court had ordered them. So they were inattentive to the case while they were participating. And then once they sort of disappeared from the case, they were inattentive for a very long time period. It was 10 1⁄2 months, in fact, between when the district court entered the default judgment and when they ultimately came back and filed their Rule 60B motion. With regard to Mr. Jansen's health, as the district court correctly recognized, Mr. Jansen's ill health is kind of conveniently mushed together in a non-chronological order in the defendants' motions. Several of the health problems occurred long before the lawsuit was filed. And Mr. Jansen, by his own account, was at least somewhat aware of the litigation. We know that he was trying to get Mr. Gorman to represent him during the summer and fall. And then we know that in January he became, or in early 2016, he was aware that the default judgment had entered against him, and we know that he was able to retain current counsel in the summer. So he was aware of the case, but he was simply non-responsive and fairly inattentive to it. And lastly, I just wanted to note that in the department's case, the department put out a press release in January. Both individual defendants, Mr. Jansen and Mr. Lynch, have admitted that they knew that they saw this press release. So regardless of whether they received service or not, they had actual knowledge of the default judgment against the company that they owned. They were both part owners of this case, and they have admitted that they found out that a company that they owned was liable for significant damages, and they did nothing. They didn't pick up the phone to call the man they thought was negotiating with the department. They didn't call the court or the Department of Labor to find out more. They did nothing. And then that continued on for another nine months or so before they finally filed their motion to vacate the default judgment. So there was certainly not quick action. They have not presented good cause. And to the extent that the employers presented some kind of a defense, it was a single conclusory statement. The district court carefully considered the facts, was within its discretion when it denied the employers' Rule 60B motion, and we ask that this court affirm that decision. Thank you, counsel. Thank you for your time. Mr. Landis. My name is Arnold Landis. I represent the Plaintiff's Appeals in the 4077 case, which was the case pending before Judge Shader. Even though the case, the Judge Shader case, is a separate case from the one that counsel just addressed, which was before Judge Kendall, the facts relevant to this appeal are really very, very similar. And really, I can really echo and not belabor but reiterate the points made by my immediate predecessor as to why the judgment should be affirmed. And as counsel just stated, the motion to vacate was properly denied because the defendants failed to show good cause for the default. They were dilatory throughout the case. There were failures to answer discovery and motions to compel. Secondly, they failed to act quickly to correct the default once they became aware of it. And third ---- Is there anything in the record about what actions the defendants' former lawyers took in trying to reach their clients? I mean, I realize that, you know, of course, defendants are responsible for the actions of their lawyers. But in this day of Google, it seems hard to believe that anyone is unfindable or unreachable. May I ask you to repeat that question? What was your question, Your Honor? Is there anything in the record about what actions the defendants' former lawyers took in trying to reach their clients? Well, I mean, he had counsel originally in the case. And then the counsel withdrew. And there was some communication with another attorney who never filed an appearance. And then counsel who is on the appeal representing the appellants has just been involved in the motion to vacate and in the appellate proceedings. So the other point I'd like to make the court aware of is I've been involved in the post-judgment enforcement proceedings as to the judgment entered against the defendants. And Judge Shader granted my motion for writ of attachment as to the defendant, Mr. Jansen, for his failure to comply with the post-judgment enforcement proceedings when he didn't respond to a citation or a rule to show cause. We sought a writ of attachment, which Judge Shader granted. So that's the posture of this case. He's not cooperating in any way with the enforcement process as he's required to do. So I think the record in this case could hardly be clearer that the order appealed from should be affirmed in this case. If there's no other questions, that's all that I wish to say. Thank you, counsel. Thank you very much for your time. Mr. Gray. How much time? You have two minutes. And very briefly, just to quickly address two or three of the last points. I was never retained to represent the defendant in post-judgment enforcement proceedings, but I don't think it's relevant to these motions because it wasn't considered. And we don't know what's going on with the defendant there. But I would say there is, you know, Judge Rovner, Justice Rovner asked if there's anything in the record about what counsel did. The initial counsel that the defendants had did file pursuant to the rules of motion to withdraw. It was filed pursuant to the rules. I don't criticize it, except to say that the last known addresses that were left were not effective last known addresses. The business addresses were irrelevant because the defendant was not in business anymore. And the defendants did not reside at those business addresses and had moved. I don't really know who's exactly at fault on that, but I do know it's uncontradicted. These defendants did not get notice of not only the judgment, but to your point, Judge, they didn't get notice of the motion to withdraw. So I don't know how they're less culpable in not filing the new address with the court if they didn't even know it had been withdrawn. If they thought it was covered by Gorman. Your clients were the principal. Your clients were the principals. If they choose to not communicate with their agents, their lawyers, then that's on them. I agree, but they had retained Mr. Gorman, who passed away. So there were a lot of things that kind of went against them here. And just finally, as to the press release, the press release, it's in the record. It says the corporate defendant had the money judgment. Now, even non-lawyers are familiar with the idea that individuals are not liable for corporate judgments. And it's not that unreasonable for them to have thought that maybe this wouldn't impact them. We don't know that they didn't come in. But we do know from the motion to vacate that they only received notice of the corporate debt and thought it didn't apply to them. And that's not that unreasonable. So I realize that there's a lot of things, if you look at them one at a time, that go against these move-ons. But I think if you look at the whole thing, justice would be better served to let them have their say in merits and finish negotiating and go forward. Thank you for your attention. Thanks to both counsel. The case will be taken under advisement. And the court stands in recess. Thank you.